UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                                                    Case No. 25-cr-20027

v.

                                                    Hon. Laurie J. Michelson

David Verner,

        Defendant.

_____/

**<u>UNITED STATES' SENTENCING MEMORANDUM</u>**

"Well [Victim 1] is honestly about to get fucked up"

"Since he played games every mf close to him gonna feel it"
    ~David Verner, February 26, 2024; PSR ¶ 13.

      Victim 2 never should have had to fear David Verner. Verner had been incarcerated since June 2020 and was serving his term in Milan prison. Victim 2 had never met Verner, did not owe him money, and had no reason to ever hear his name. Verner decided otherwise. He used a contraband cell phone to reach out from Milan into Victim 2's home and harass and threaten her. He threatened to hurt her, her family, and Victim 1, who was also housed with Verner at Milan.

      Prison did not deter Verner from threatening victims inside and outside its walls, but this is consistent with Verner's response to court

1

supervision. He has repeatedly violated probation and parole conditions going back to his Domestic Battery conviction in 2004. For the reasons below, the government recommends a 46-month sentence, followed by a three-year term of supervised release.

I.   Facts

In early 2024, while in Milan prison, David Verner took over a $3,500 debt which Victim 1 owed to another inmate. PSR ¶ 12. When Victim 1 was unable to pay back the debt, Verner attempted use the debt to force Victim 1 and his wife into a check fraud scheme. *Id*. Verner had learned that Victim 1 was incarcerated for similar crimes and had also used contacts within Milan to learn personal information about Victim 1's family. *Id*. On February 15, 2024, Victim 1 responded by asking Milan staff to place him in protective custody. *Id*.  Verner then threatened Victim 1 by kite.



Excerpt of kite sent from Verner to Victim 1. Received by Victim 1 on March 14, 2024.

The day after Victim 1 was placed in protective custody, Verner began working on extorting Victim 1's wife and daughter to pay back the debt. *Id*. ¶ 13. He used Facebook messenger and text messages to contact them. *Id*. When they didn't appear to have the money, he tried to get them to contact Victim 1's parents to get them to pay. Whenever the victims told Verner they weren't able to pay he responded with threats or harassment.

[All texts sent on February 26, 2024]

Verner: What's up with my money

Victim 2: we don't have it

3

Verner: Send me a pic of that pussy I know it's petty like you

[…]

Verner: U don't love [Victim 1]??

Victim 2: i love [Victim 1] but don't have that kind of money not even close

Verner: Well [Victim 1] is honestly about to get fucked up.

[…]

Verner: Let me see that pussy

Victim 2: this is harassment please leave me alone i really don't have money and don't know what [Victim 1] did with it but this is between you and him have a nice day.

Verner: Ima show you ass more then harassment I'll be home soon y'all taken this shit for a joke bitch u have know clue who y'all fucking with but y'all will see

[…]

Verner: Since he played games every mf close to him gonna feel it

*Id.* ¶ 13 (additional contextual texts added).

## II. Criminal History

4

Verner has a lengthy criminal history including repeatedly violating court supervision conditions. At the time of the offense, he was in custody for Conspiracy to- and Possession with Intent to- Distribute Heroin. PSR ¶ 38. On top of Verner's new felony and other threatening behavior, he had over twenty separate violations while incarcerated at Milan. *Id*. He was repeatedly sanctioned for his violations including loss of good time, loss of privileges, and he was eventually placed in the Special Housing Unit on two separate occasions. *Id*. Verner also violated probation or parole during his previous sentences in 2013, Unlawful Possession of a Weapon by a Felon, 2005, Possession of a Controlled Substance, and 2004, Domestic Battery.

## II.  Guidelines Calculation

Although the sentencing guidelines are advisory, the Court must begin its sentencing analysis by properly calculating the defendant's guideline range. *See United States v. Booker*, 543 U.S. 220, 245 (2005).

Probation calculated Verner's base offense level as 18, PSR ¶ 20, and added two levels because Verner's threats included the express or implied threat of death or bodily injury. *Id*. ¶ 21. Probation credited Verner with a three-level reduction for acceptance of responsibility. *Id*.

5

¶¶ 27-28. With a criminal history category of IV, PSR ¶ 42, Probation calculates Verner's guideline range as 37–46 months. PSR ¶ 88. Undersigned counsel believes that this is the correct guideline range.

### III. Sentencing Factors

Congress provided the factors that courts must consider when imposing a sentence in 18 U.S.C. § 3553(a). The government addresses the most relevant § 3553(a) factors below.

A.  Nature and Circumstances of the Offense and the History and Characteristics of the Defendant, 18 U.S.C.§ 3553(a)(1)

From inside prison, Verner threatened and harassed his victims. He was incarcerated in part to protect the public; he should not have been able to harm others, yet he managed. It wasn't easy; Verner had to obtain a contraband cell phone as well as find out contact information for his victims before he could try and extort them. They had never spoken with Verner, did not know him, and had no reason to ever communicate with him. Threatening to hurt others or their families for money is a serious offense, doing so from inside a prison is substantially more egregious.

Verner also committed numerous violations while in prison including the instant offense. He lost privileges, lost good time, and

spent time in the Special Housing Unit. Moreover, Verner attempted to recruit his victims into a check fraud scheme to pay off Victim 1's debt. Verner is a long-time gang member who committed his first crimes in his 20s and has continued this behavior for decades. Probation, parole, and incarceration has not changed his behavior. These factors weigh in favor of a 46-month sentence.

    B.    <u>Adequate Deterrence and Protection of the Public, 18 U.S.C. § 3553(a)(2)(B) and (C)</u>

Prison did not deter David Verner or protect the public from his actions. Prior sentences have not convinced him to change his behavior. Verner has violated probation, parole, and committed this offense while incarcerated. Although a sentence at the top of the guidelines may not deter Verner, it is the best way to protect the public from his further crimes. Verner's conduct calls for a 46-month, guideline sentence.

## IV. Conclusion

The United States recommends a 46-month, guideline prison sentence followed by three years of supervised release.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

*s/Micah S. Wallace*
Micah S. Wallace
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
313-226-9591
Micah.Wallace@usdoj.gov

Date: October 9, 2025

## **CERTIFICATE OF SERVICE**

I certify that on October 9, 2025, I electronically filed the Government's Sentencing Memorandum with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of such filing to the following: Elizabeth A. Young and Senad Ramovic, Attorneys for Defendant David Verner.

*s/Micah S. Wallace*
Micah S. Wallace
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
313-226-9591
Micah.Wallace@usdoj.gov